Eddie Lee **HOUSER**, Plaintiff,

v.

James T. **MORRIS**, Chairman; J. O. Partain, Jr.; Mamie B. Reese; Floyd Busbee; Mobley Howell, Members of State Board of Pardons and Paroles, Atlanta, Georgia, Defendants.

Civ. A. No. C81–1167.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 16, 1981.

Eddie Lee Houser, pro se.

---

ORDER

MOYE, Chief Judge.

Eddie Lee Houser, a state prisoner currently incarcerated at Rutledge Correctional Institute in Columbus, Georgia, seeks leave to file *in forma pauperis* this civil rights complaint against members of the Georgia State Board of Pardons and Paroles. He alleges that his constitutional rights were violated when he was denied parole. Let the complaint be filed *in forma pauperis*.

Plaintiff claims that the parole board's decision to deny him parole was violative of his constitutional rights for several reasons. He claims that it is unconstitutional to base his parole decision on the circumstances and nature of his offense and his pattern of criminal behavior, and he alleges that the board considered an invalid past conviction in making their determination. He further contends that his denial of parole was based in part on his failure to participate in self-help programs which participation is an impossibility since such programs do not exist in the institution, that he has not been given a personal interview with the parole board, and that more whites and inmates with wealthy families have been more likely to be granted parole. He seeks declaratory, injunctive, and monetary relief.

As an initial matter, the portion of this complaint seeking damages against the members of the Parole Board must be dismissed since parole officials are immune from damage suits under the Civil Rights Act for actions taken in processing parole applications. *Johnson v. Wells*, 566 F.2d 1016, 1018 (5th Cir. 1978); *Cruz v. Skelton*, 502 F.2d 1101 (5th Cir. 1974); *Silver v. Dickson*, 403 F.2d 642 (9th Cir. 1978), *cert. denied*, 394 U.S. 990, 89 S.Ct. 1477, 22 L.Ed.2d 765 (1969).

The validity of plaintiff's claims under the federal Constitution must be examined in light of *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The Supreme Court in *Greenholtz* held that statutory provision for the mere possibility of parole does not create a liberty interest entitled to the protection of due process. *Id.* at 9–11, 99 S.Ct. at 2104–06. The Court concluded, however, that the unique structure and language of the Nebraska parole statute provided an expectation of parole sufficient to create a liberty interest entitled to some measure of constitutional protection. *Id.* at 12, 99 S.Ct. at 2106. That statute provides that the Nebraska parole board "shall order" the release of a prisoner eligible for parole unless the board, upon consideration of four predictive factors, concludes that parole should be deferred. *Id.* at 11, 99 S.Ct. at 2107. In a short opinion written after *Greenholtz*, the Fifth Circuit affirmed this Court's holding that the petitioner's claim against the Georgia Parole Board was without merit inasmuch as it was grounded in an allegation that the board's refusal to allow the petitioner access to his files violated due process. *Jackson v. Reese*, 608 F.2d 159 (5th Cir. 1979). While the Fifth Circuit in *Reese* also reaffirmed its earlier holding in *Payne v. United States*, 539 F.2d 443 (5th Cir. 1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1131, 51 L.Ed.2d 554 (1977), that no constitutional violation arises as a result of the parole board's consideration of the nature and circumstances of a petitioner's offense, 608 F.2d at 160, it impliedly held that the Georgia parole statute, Ga. Code Ann. § 77–501 *et seq.* (1973), provides no *procedural* due process right to inspect files in the parole board's office. The question of whether the statute granted liberty interests protected under the doctrine of substantive due process was not reached.

The Court has been unable to locate any published decisions from this district or the Fifth Circuit examining the question of whether an expectancy of release exists under the Georgia statute. The task before this Court, therefore, is to compare the Nebraska statute which *Greenholtz* found created an expectancy of release with the Georgia parole statute.

As noted by the Fifth Circuit in *Williams v. Briscoe*, 641 F.2d 274 (1981), the Nebraska statute considered by *Greenholtz* mandates parole, once eligibility has been attained, unless one of four specific reasons proscribes release. Neb.Rev.Stat. § 83–1,-114(1) provides:

"Wherever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:

"(a) There is a substantial risk that he will not conform to the conditions of parole;

"(b) His release would depreciate the seriousness of his crime or promote disrespect for law;

"(c) His release would have a substantially adverse effect on institutional discipline; or

"(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date."

The Supreme Court concluded that this language of the Nebraska statute resulted in a legitimate expectation of release absent the requisite finding that one of the justifications for deferral exists. ' 442 U.S. at 12, 99 S.Ct. at 2106.

Several circuits examining parole statutes since *Greenholtz* have found no such legitimate expectation of release in the state statute under examination. In *Williams v. Briscoe*, 641 F.2d 274 (5th Cir. 1981), the Fifth Circuit found no such legitimate expectation embodied in Texas' parole statute. The court, having examined Tex.Code Crim. Proc. art. 42.12 sections 14A(e), 15(a), and 15(f) [1] concluded that the language of the Texas statute cannot reasonably be taken to encourage the expectancy of the right to release since the statute allows the parole board to make a subjective evaluation of whether the applicant's release would be for the best interest of society and whether the inmate appears able and willing to fulfill the obligations of a law-abiding citizen. *Id.* at 277. Likewise, other appellate courts, basing their decisions on the discretion allowed the parole board by the statutes under examination, have found no expectation of parole in such statutes. *See Averhart v. Tutsie*, 618 F.2d 479 (7th Cir. 1980) (Indiana statute); *Wagner v. Gilligan*, 609 F.2d 866 (6th Cir. 1979) (per curiam) (Ohio statute); *Boothe v. Hammock*, 605 F.2d 661 (2d Cir. 1979) (New York statute); *Shirley v. Chestnut*, 603 F.2d 805 (10th Cir. 1979) (Oklahoma statute). Those courts finding an expectation of parole and thus a liberty interest protected by the due process clause have done so either under state constitutional provisions, *Tasker v. Mohn*, 267 S.E.2d 183 (W.Va.1980), or by looking to a parole board's practice to find a legitimate expectation of pardon by virtue of the regularity

1. § 14A(e):

A parole panel, as hereinafter provided, may recommend the granting, denying, or revocation of parole....

§ 15(a):

The Board is authorized to release on parole, with the approval of the Governor, any person confined in any penal or correctional institution of this State who is eligible for parole....

§ 15(f):

Before ordering the parole of any prisoner, the Board may have the prisoner appear before it and interview him. A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered a reduction of sentence or pardon. A prisoner shall be placed on parole only when arrangements have been made for his proper employment or for his maintenance and care, and ... when the Board believes that he is able and willing to fulfill the obligations of a law-abiding citizen. Every prisoner while on parole shall remain in the legal custody of the institution from which he was released but shall be amenable to the orders of the Board.

with which the board grants relief, *Dumsc-hat v. Connecticut Board of Pardons*, 618 F.2d 216 (2d Cir. 1980).[2] Finally, the Third Circuit, in *Block v. Potter*, 631 F.2d 233 (3rd Cir. 1980), over a forceful and well reasoned dissent by Chief Judge Seitz,[3] found due process limitations in the Virgin Islands parole statute, 5 V.I.C. § 4604 (1967), despite the acknowledgment of the presence of a large measure of discretion in the parole system under review. *Id.* at 236.

Having examined the progeny of *Greenholtz*, the Court now turns to the Georgia parole statute under which the plaintiff herein brings this suit. Ga.Code Ann. § 77–514 (1973) establishes the prerequisites to probation as follows:

> Good conduct and efficient performance of duties by a prisoner shall be considered by the board in his favor and shall merit consideration of an application for pardon or parole. No prisoner shall be released on probation or placed on parole until and unless the board shall find that there is reasonable probability that, if he is so released, he will live and conduct himself as a respectable and law-abiding person, and that his release will be compatible with his own welfare and the welfare of society. No person shall be released on pardon or placed on parole unless and until the board is satisfied that he will be suitably employed in self-sustaining employment, or that he will not become a public charge: Provided, however, the board may, in its discretion, and notwithstanding other provisions of this Chapter, grant pardon or parole to any aged or disabled persons.

The statute directs the Board to consider good conduct and efficient performance of duties by a prisoner, and forbids release except where the Board finds a reasonable probability that the prisoner will live and conduct himself as a respectable, law-abiding person whose release will be compatible with his own welfare and the welfare of society. The Board must further be convinced that the parolee will become suitably employed and will not become a public charge.

■ All of these determinations are discretionary ones to be made by the Board after a subjective analysis of each individual's circumstances. The statute contains language similar to the Texas statute examined in *Williams v. Briscoe*, 641 F.2d 274 (5th Cir.), with respect to the Board's determination of whether the prisoner's release will benefit society and whether the prisoner will become a law-abiding citizen. The Georgia statute, like that of Texas, fails to include any language such as that found in Nebraska's statute examined in *Greenholtz* which would mandate parole unless exceptions appear. Consequently, the Court holds that the Georgia parole statute creates no expectation of release, meaning that all of plaintiff's section 1983 claims based on violations of his substantive or procedural due process rights are without merit and are hereby DISMISSED.

■ The Court recognizes the possibility that a state prisoner may bring a section

---

2. Whether the Fifth Circuit would find a legitimate expectation of pardon by virtue of the regularity with which a board of pardons grants relief seems doubtful following the court's rejection of the petitioner's argument in *Williams v. Briscoe*, 641 F.2d 274 (5th Cir. 1981), that an expectation could be grounded in a recommendation of parole by the board to the governor. The *Williams* court specifically noted *Greenholtz's* examination of those instances in which the controlling *legislation* creates a protected expectation and explicitly declined to hold that due process considerations arise whenever the practices and history of a parole system indicate that most inmates are paroled when the board makes a favorable recommendation. 641 F.2d at 277.

3. Chief Judge Seitz argued that the majority's conclusion that all prisoners have a liberty interest not to be treated arbitrarily by the government, *see* 631 F.2d at 236, in effect avoids the requirement that a court first must identify the interest toward which the government has acted arbitrarily when it reviews a due process claim. *Id.* at 244. He disagreed that the discretionary parole system created by the territorial statute created a legitimate expectation of parole under *Greenholtz*, but he forcefully argued that the constitutionality of the grounds on which the parole board relies are properly analyzed under other sections of the Constitution, such as the equal protection clause and the first amendment. *Id.*

1983 action against a parole board for violation of his rights under the equal protection clause of the Fourteenth Amendment. The petitioner herein has made broad allegations that the denial of his petition for parole was based on his lack of wealth and his race. As the Supreme Court noted in *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1973), "even though a person has no 'right' to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely." Consequently, petitioner's equal protection claims state a valid *prima facie* cause of action.

Plaintiff has filed *in forma pauperis* this civil complaint. Because it appears that plaintiff has stated facts which, if true, may entitle him to relief under the Equal Protection Clause, this action shall proceed as any other civil action. The Clerk of the Court is hereby directed to have the United States Marshal effect service of process upon the named defendant(s).

Plaintiff is required to serve upon the defendant(s) or counsel for the defendant(s) a copy of every further pleading or other document which he files with the Court. He shall include with each paper filed with the Clerk of the Court a certificate stating the date on which he mailed an accurate copy of that paper to defendant(s) or his (their) counsel. This Court will disregard any papers submitted which have not been properly filed with the Clerk of the Court or which do not include a certificate of service. Plaintiff is further required to keep the Court and the defendant(s) advised of his current address at all times during the pendency of this suit.