**John MERIT,**

v.

**Bruce LYNN, et al.**

**Civ. A. No. 92–0681.**

United States District Court,
W.D. Louisiana,
Lake Charles Division.

March 28, 1994.

Paula K. Cobb, Cobb & Cobb, Baton Rouge, LA, John Richard Merit, pro se.

Sidney J. Rosteet, Lorenzi & Sanchez, Lake Charles, LA, for plaintiff.

Clement Story, III, LA Dept. of Justice Crim. Div., David Glen Sanders, Pamela J. LeBato, LA Dept. of Justice, Baton Rouge, LA, for defendants.

## MEMORANDUM RULING

TRIMBLE, District Judge.

Cross motions for summary judgment were considered by the Magistrate Judge who issued a Report and Recommendation on February 2, 1994. John Merit (Merit) alleges that his due process rights have been violated when he was refused "parole work release" by the Louisiana Parole Board.

Merit contends that LSA–R.S. 15:574.4E creates a protected liberty interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Magistrate Judge, in his Report and Recommendation, recommends that Merit's motion for summary judgment be denied and that the summary judgment of the defendants be granted dismissing the plaintiff's claims with prejudice. A hearing was also held on March 21, 1994, to develop a full record pursuant to the Fifth Circuit's instructions on an earlier remand.

On February 17, 1994, Merit filed an objection to the Report and Recommendation in which he asserts that the Magistrate Judge's findings are contrary to law and he reminds this court that he has not abandoned his motion for class action which is still pending before this court.

Merit asserts that the Magistrate Judge erred when he failed to recognize the mandatory language in the Louisiana statute, LSA–R.S. 15:574.4E [1], as creating a liberty interest, and in citing *Williams v. Briscoe,* 641 F.2d 274 (5th Cir.1981) as support for this decision. The plaintiff argues that the language in the Texas statute and that of Louisiana do differ significantly, whereas the Magistrate Judge found that the differences in the language between the two statutes did not provide a logical basis for different results based on these statutes. Merit asserts that the Louisiana statute is more like the Nebraska statute in that it creates an expectancy of release upon meeting the statutory requirements, where an inmate must overcome additional obstacles in Texas.

In *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Supreme Court held that the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. The Supreme Court also held in *Greenholtz,* however, that a state statute governing parole release may

---

1.  LSA R.S. 15:574.4(E) states:

    "The board shall render its decision ordering or denying the release of the prisoner on parole within thirty days after the hearing. A parole shall be ordered only for the best interest of society, not as an award of clemency, and upon determination by the board that there is reasonable probability that the prisoner is able and willing to fulfill the obligations of a law-abiding citizen so that he can be released without detriment to the community or to himself."

create an "expectation of parole" protected by the due process clause.[2] Since *Greenholtz,* the Supreme Court and various Courts of Appeal have had several opportunities to address whether state laws and regulations created enforceable liberty interests in the prison setting.[3]

In *Olim v. Wakinekona,* supra, the Supreme Court held that Hawaii's prison regulations governing prison transfers do not create a liberty interest:

"The [ ] cases demonstrate that a State creates a protected liberty interest by placing substantive limitations on official discretion." An inmate must show "that particularized standards or criteria guide the State's decision makers." If the decision-maker is not "required to base its decisions on objective and defined criteria," but instead "can deny the requested relief for any constitutionally permissible reason or for no reason at all," the State has not created a constitutionally protected liberty interest. As quoted in *Sultenfuss,* 7 F.3d at 1546.

The court went on to hold that since Hawaii's prison regulations placed no substantive limitations on official discretion, no liberty interest under the Due Process Clause was created.

In *Board of Pardons v. Allen,* supra, relied upon by the plaintiff, the Supreme Court held that the Montana statute did create a liberty interest in parole. The statute provided, in pertinent part, that the parole board " 'shall release on parole' [any inmate] when [in the board's] opinion there is a reasonable probability that the prisoner can be released without detriment to the prisoner or the community." The Montana statute also specifically mandated release unless one of several proscribing factors was found to exist, however. The court reasoned that this statute created a liberty interest because of the use of the mandatory language "shall", in spite of the broad discretion given to the board elsewhere in the statute. The court held that this discretion was not incompatible with the existence of a liberty interest.

The Supreme Court in *Allen,* supra, stated that:

"The Court thus held in *Greenholtz,* that the presence of general and broad release criteria—delegating significant discretion to the decision-maker did not deprive the prisoner of the liberty interest in parole created by the Nebraska statute. In essence, the Court made a distinction between two entirely different uses of the term discretion. In one sense of the word, an official has discretion when he or she "is simply not bound by the standards set by the authority in question." R. Dworkin, Taking Rights Seriously 32 (1977). In this sense, officials who have been told to parole whomever they wish have discretion. In *Greenholtz,* the Court determined that a scheme awarding officials this type of discretion does not create a liberty interest in parole release. But the term discretion may signify that "an official must use judgment in applying the standards set him [or her[ by authority"; in other words, an official has discretion when the standards set by a statutory or regulatory scheme "cannot be applied mechanically." Dworkin, supra, at 31, 32; see also *Id,* at 69. ("[W]e say that a man has discretion if his duty is defined by standards that reasonable [people] can interpret in different ways"). The Court determined in *Greenholtz* that the presence of official discretion in this sense is not incompatible with the existence of a liberty interest in parole release when release is *required* after the board determines (in its broad discretion) that the necessary prerequisites exist." [4]

The Eleventh Circuit, in *Sultenfuss,* 7 F.3d at 1547, interpreted this to mean that even a grant of broad discretion may give rise to a liberty interest if the decision maker is required to apply "standards set him [or her]

---

**2.** *Id,* 442 U.S. at 11, 99 S.Ct. at 2106.

**3.** See *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981); *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415,

96 L.Ed.2d 303 (1987); *Williams v. Briscoe,* 641 F.2d 274 (5th Cir.1981); *Sultenfuss v. Snow,* 7 F.3d 1543 (11th Cir.1993).

**4.** *Id.,* 482 U.S. at 375–76, 107 S.Ct. at 2419.

by authority" or if the decision maker's discretion is "channeled" by requiring the application of certain standards or guidelines.

The Fifth Circuit examined such a statute in *Williams v. Briscoe*, 641 F.2d 274 (5th Cir.1981). The threshold question for the court then and now is whether the discretionary parole provisions contained in the Louisiana statute create an expectancy of release that rises to the level of a constitutionally protected entitlement. The Magistrate Judge found the language of the Texas statute discussed in *Briscoe* so similar to the language of the Louisiana statute that there was no logical basis for coming to a different result. The plaintiff argues, however, that the language of these two statutes does differ significantly.[5]

As in Texas, when the Louisiana inmate becomes eligible for parole, he must overcome other obstacles and meet other requirements. He must have the Parole Board's favorable recommendation and this is not statutorily granted as a matter of right. In comparison, the Nebraska inmate becomes entitled to release unless one of the proscribing factors is found to exist. The Fifth Circuit stated that the language in the Texas statute "a parole shall be ordered only for the best interest of society ... when the Board believes that [the inmate] is able and willing to fulfill the obligations of a law-abiding citizen", makes totally unwarranted the suggestion that the statute creates a presumption of entitlement to release on parole. The Louisiana statute (R.S. 15:574.-4(E)) states that [after a hearing] "[t]he Board shall render its decision granting *or denying* the release.... only for the best interest of society ... upon determination by the Board that there is reasonable probabili-

ty that the prison is willing and able to fulfill the obligations of a law-abiding citizen ...". This court agrees with the Magistrate Judge that this language is so similar to that of the Texas statute that a different result is not warranted and we therefore find that no liberty interest has been created in this statute. The Louisiana statute creates a hope of release, but it does not create a legitimate expectation of release.

In accordance with the reasons set forth herein, a judgment will be signed denying the plaintiff's motion for summary judgment and granting the defendants' motion for summary judgment, dismissing the plaintiff's claims with prejudice.

Lake Charles, Louisiana, this 24th day of March, 1994.

### *JUDGMENT*

For the reasons stated in the Report and Recommendation and in the corresponding Memorandum Ruling, after an independent review of the record and a *de novo* determination of the issues, having considered the objections filed herein, and having determined that the findings are correct under the applicable law;

IT IS ORDERED, ADJUDGED, AND DECREED the plaintiff's motion for summary judgment is herein DENIED and the defendants' motion for summary judgment is GRANTED dismissing the plaintiff's claims with prejudice.

Lake Charles, Louisiana, this 24th day of March, 1994.

---

5. The Texas statute, Tex.Code Crim.Pro. art 42.-12, in pertinent part, reads:
   § 14A(e):
   A parole panel, as hereinafter provided, may recommend the granting, denying or revocation of parole....
   § 15(a):
   The Board is authorized to release on parole, with the approval of the Governor, any person confined in any penal or correctional institution of this State who is eligible for parole ...
   § 15(f):
   Before ordering the parole of any prisoner, the Board may have the prisoner appear before it and interview him. A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered a reduction in sentence or pardon. A prisoner shall be placed on parole only when arrangements have been made for his proper employment or for his maintenance and care, and.... when the Board believes that he is willing an able to fulfill the obligations of a law-abiding citizen. Every prisoner while on parole shall remain in the legal custody of the institution from which he was released but shall be amenable to the orders of the Board.

### REPORT AND RECOMMENDATION

WILSON, United States Magistrate Judge.

Presently before the court are cross motions for summary judgment. They have been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

John Merit (Merit) filed this action alleging that his rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution had been violated when he was refused "parole work release" by the Louisiana Parole Board. Merit contends that LSA–R.S. 15:574.4E creates a liberty interest protected under the Due Process Clause. In this action he seeks declaratory and injunctive relief as well as damages.

Merit began serving a 50–year sentence for armed robbery in 1972. Concurrent sentences for manslaughter and attempted murder have expired. Originally, Merit was not eligible for parole. In November, 1989, the Board of Pardons recommended that the Governor restore his parole eligibility. Apparently this recommendation was never acted upon. In 1990 Louisiana enacted LSA–R.S. 15:574.4A(3).[1] Thereafter, Merit was considered for parole, but on November 19, 1991, the Parole Board decided to deny him parole/parole work release.

On July 6, 1992, the district court *sua sponte* dismissed Merit's complaint with prejudice concluding that Merit had no liberty interest in parole that was protected under the Due Process Clause. Merit appealed this ruling. The Fifth Circuit vacated the judgment of the district court and remanded for further proceedings. The Fifth Circuit did not reach the merits of the case but found that the district court had erred by deciding the case *sua sponte* where Merit was acting *pro se* and where defendants had not been served. 990 F.2d 626.

Subsequent to remand, the undersigned ordered the defendants served and appointed counsel to represent Merit. A status conference was held on November 19, 1993, and all parties agreed that there was no genuine issue as to any fact material to the determination of whether Louisiana's parole statute gives rise to a liberty interest protected by due process. Accordingly, the parties were advised that this issue would be taken up on cross motions for summary judgment.[2]

### LAW AND ANALYSIS

The Fourteenth Amendment to the United States Constitution proscribes the deprivation of "life, liberty or property without due process of law." Analysis under the procedural component of due process involves two steps. The first step requires the determination of whether a liberty or property interest protected by the Due Process Clause is involved. If so, then the second step is reached. The second step involves the determination of whether "there is a fair decisionmaking process before the government takes some action directly impairing" the involved liberty or property interests. Rotunda and Nowak, *Treatise on Constitutional Law: Substance and Procedure*, 2d § 14.6; *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 459, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). The motions presently before the court are limited to the issue of whether Merit has a liberty interest in parole that is protected by the Due Process Clause.

A protected liberty interest may arise from either the Due Process Clause itself or from state law. *Thompson, supra*. The Due Process Clause does not directly give rise to a protected liberty interest in parole. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979); *see also Board of Pardons v. Allen*, 482 U.S. 369, 372

---

1. For the purposes of the present motions this court assumes without deciding that Merit was and is eligible for parole consideration. *but see* LSA–R.S. 15:574.4B which in part provides: "No person shall be eligible for parole consideration who has been convicted of armed robbery and denied parole eligibility under the provisions of R.S. 14:64 ..."

2. Merit's motion for summary judgment indicated that he would also possibly claim that "practices and regulations" adopted by the parole board have given rise to a liberty interest protected by due process. These claims have been abandoned. (*See* Merit's Motion to Abandon, record item # 43).

at n. 3, 107 S.Ct. 2415, 2418 at n. 3, 96 L.Ed.2d 303 (1987). However, when a state establishes a parole system it may create a protected liberty interest. *Id.* Whether Louisiana has done so requires that the language of the relevant statutes and regulations be examined closely.

In order to create a protected liberty interest, Louisiana's statutes and regulations pertaining to parole must: 1) establish "substantive predicates" to govern decision making; *and* 2) contain "explicitly mandatory language, *i.e.,* specific directives to the decision maker that if the regulations' substantive predicates are present a particular outcome must follow." *Thompson, supra* 490 U.S. at 462–63, 109 S.Ct. at 1910 (internal quotations omitted). The fact that the parole statute and regulations provide a "possibility" of parole creates only a hope of parole—a hope not protected by due process. *Greenholtz, supra* 442 U.S. at 9, 99 S.Ct. at 2105.

In *Greenholtz* the Supreme Court found that Nebraska had created a protected liberty interest in parole with the following provision:

> "Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall order his release unless* it is of the opinion that his release should be deferred because:
> "(a) there is a substantial risk that he will not conform to the conditions of parole;
> "(b) his release would depreciate the seriousness of his crime or promote disrespect for law;
> "(c) his release would have a substantially adverse effect on institutional discipline; or
> "(d) his continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date." 442 U.S. at 11, 99 S.Ct. at 2106. (emphasis added)

The court emphasized that the statute mandated parole unless certain specified findings were made. This, the court concluded, created an "expectancy of release" entitled to due process protection.

The Supreme Court concluded that Montana's parole statute created a protected liberty interest in *Board of Pardons v. Allen, supra.* Montana's parole statute included, in pertinent part, the following:

> "Prisoners eligible for parole. (1) subject to the following restrictions, the board *shall release on parole* ... any person confined in the Montana state prison or the women's correction center ... *when* in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community[.]
>
> . . . .
>
> "(2) A parole shall be ordered only for the best interests of society and not as an award of clemency or a reduction of sentence or pardon. A prisoner shall be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen." (emphasis supplied) 107 S.Ct. at 2420. (emphasis added)

The court noted that these provisions (like the Nebraska statute involved in *Greenholtz* ) mandated parole release when specified findings were made. "[T]he argument that a statute that mandates release 'unless' certain findings are made is different from a statute that mandates release 'if,' 'when' or 'subject to' such findings being made" was rejected. *Allen supra* 482 U.S. at 378, 107 S.Ct. at 2421.

Merit argues that LSA–R.S. 15:574.4E creates a protected liberty interest. It provides in pertinent part:

> "A parole shall be ordered only for the best interest of society, not as an award of clemency, and upon determination by the board that there is a reasonable probability that the prisoner is able and willing to fulfill the obligations of a law-abiding citizen so that he can be released without detriment to the community or to himself."

In *Williams v. Briscoe,* 641 F.2d 274 (5th Cir.1981) the Fifth Circuit concluded that almost identical language found in Texas' parole statute did not create a protected liberty interest. The differences between the language in that statute and the language

found in LSA–R.S. 15:574.4E do not provide logical basis for a different result in this case.

Remarkably similar language was found in a portion of the Montana statute quoted above. However, unlike the Montana statute, the Louisiana statute does not contain the critical language which mandates parole release when specified findings are made. The Louisiana statute prohibits parole release in the absence of the specified prerequisites, but it does not mandate parole release if the prerequisites are satisfied. The Louisiana Parole Board is given discretion not only in determining whether the listed prerequisites are met but also in determining whether parole release should be granted even if the prerequisites are satisfied. *See Allen, supra* 482 U.S. at 378, 107 S.Ct. at 2421 n. 10. The statute creates a hope of release but it does not create a legitimate expectation of release. Accordingly, this court concludes that Merit does not have a liberty interest in parole protected by the Fourteenth Amendment. *See also Bosworth v. Whitley,* 627 So.2d 629 (La.1993) ("Louisiana parole statutes do not create an expectancy of release or liberty interest ...").

For the foregoing reasons it is recommended that plaintiff's motion for summary judgment be denied and that the motion for summary judgment of the defendants be granted dismissing plaintiff's claims with prejudice.[3]

Under the provisions of 28 U.S.C. 636(b)(1)(C) the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE WILL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDS ON APPEAL.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 2nd day of February, 1994.

---

**3.** The Fifth Circuit remanded this case with instructions to:

"....

    d. Conduct such further hearings or proceedings as may be necessary to develop a full record as to the process and procedures involved in the Louisiana Parole Board's consideration of Merit's requested parole."

This hearing is scheduled for March 3, 1994. Accordingly, it is recommended that a judgment dismissing this action not be signed until after that date.